FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 10, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STEVEN H.,[1]

                    Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                  Defendant.

No.   4:19-CV-5257-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Steven H. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly determining that Plaintiff did not have a severe physical impairment, 2) improperly weighing the medical opinions, 3) discounting Plaintiff's symptom reports, 4) improperly determining that the

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 13 & 15.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

impairments did not meet or equal Listings 1.02 and 1.04, and 5) relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 13, and grants the Commissioner's Motion for Summary Judgment, ECF No. 15.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.* § 416.920(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied. [8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging a disability onset date of January 6, 2012.[18] His claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Stephanie Martz.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since January 6, 2012, the alleged onset date;

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 85.

[19] AR 83.

[20] AR 53-79.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the cervical and lumbar spine, learning disorder (math, reading, disorder of written expression), and pain disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently, and sit about 6 hours and stand and/or walk about 6 hours in an 8-hour day with regular breaks. He has an unlimited ability to push pull within these exertional limitations. He can frequently climb ramps and stairs, and occasionally climb ladders, ropes or scaffolds. He has no limitation to balance, kneel, crouch and crawl. He can frequently stoop and reach overhead. He should avoid concentrated exposure to extreme cold and vibration. He is able to understand, remember and carry out simple repetitive tasks and instructions. He is able to maintain attention and concentration for 2-hour intervals over an 8-hour day with regular. Breaks. He may need additional time to adapt to changes in work setting and routine (i.e. approximately 10% more time than an average worker).

- Step four: Plaintiff has no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

numbers in the national economy, such as cashier II, housekeeping cleaner, and packing line worker.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the consulting opinion of James Opara, M.D. and evaluating opinion of Cecilia Cooper, Ph.D.;

- partial weight to the opinions of state agency consultants Robert Bernardez-Fu, M.D. and Lisa Hacker, M.D.;

- little weight to the evaluating opinion of Joseph Poston, ARNP;

- very little weight to the examining opinion of Penny Stringer, M.D. and treating opinion of S. Prakash, M.D.'s August 2011 report; and

- no weight to the treating opinion of Debra Beriletti, ARNP.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

---

[21] AR 17-26.

[22] AR 23-25.

[23] AR 22.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

Plaintiff requested review of the ALJ's decision by the Appeals Council, which reviewed and remanded the case.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

---

[24] AR 132-33.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

**A.    Step Two (Severe Impairment): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred at step two by failing to identify bilateral carpal tunnel syndrome and cervical radiculopathy as severe impairments.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[33] To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.[34] A medically

_____

Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] 20 C.F.R. § 416.920(c).

[34] 20 C.F.R. § 416.908.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[35] Similarly, an impairment is not severe if it does not significantly limit a claimant's physical ability to do basic work activities, which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking.[36]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[37] And "[g]reat care should be exercised in applying the not severe impairment concept."[38]

Here, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, learning disorders, and pain disorder.[39] Yet, the ALJ found that Plaintiff's carpal tunnel syndrome, cervical radiculopathy, and asthma were non-severe impairments. These findings are a reasonable interpretation of the medical record and supported by substantial evidence.

---

[35] SSR 85-28 at *3.

[36] 20 C.F.R. § 416.921.

[37] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[38] SSR 85-28.

[39] AR 18.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ observed that Plaintiff tested mildly positive in Tinel's testing of wrists, negative at elbows, and 5/5 strength across all joints. Further, the ALJ indicated that prior examinations found Plaintiff's wrist and wrist joints were within normal limits.[40] The ALJ also noted lack of treatment for carpal tunnel syndrome and that Plaintiff's symptoms of neck pain and decreased range of motion have been accounted for in the diagnosis of degenerative disc disease of the cervical spine. Plaintiff argues the ALJ failed to adequately develop the record and that the record shows "radiculopathy, numbness, and pain in the upper extremities, limiting [Plaintiff's] exertional and manipulative activities."[41] However, Plaintiff cites to no medical records or opinions in support of this. Thus, the ALJ reasonably found Plaintiff's carpal tunnel syndrome and cervical radiculopathy have not been established as severe impairments.

Furthermore, even if the ALJ should have determined one of the conditions identified by Plaintiff is a severe impairment, any error would be harmless because the step was resolved in Plaintiff's favor.[42]

## B.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff argues that the ALJ erred by not addressing S. Prakash, M.D.'s September 2010 opinion, and the opinions of Ernest Segren, PA-C, and Aaron

---

[40] AR 18 (citing AR 423.)

[41] ECF No. 13 at 15.

[42] *Stout,* 454 F.3d at 1055; *Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

Thomason, ARNP. Plaintiff also challenges the ALJ's assignment of very little weight to Penny Stringer, M.D., little weight to Joseph Poston, ARNP, and no weight to Debra Beriletti, ARNP. As discussed below, the Court finds Plaintiff fails to establish that the ALJ consequentially erred when weighing the medical opinions.

       1.   <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[43] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[44]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[45] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by

---

[43] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[44] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[45] *Lester*, 81 F.3d at 830.

substantial evidence, and the opinion of an "other" medical source[46] may be rejected for specific and germane reasons supported by substantial evidence.[47] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[48]

2.    Dr. Prakash.

On March 30, 2010, Dr. Prakash performed a physical evaluation of Plaintiff. Dr. Prakash diagnosed Plaintiff with carpal tunnel syndrome and opined that Plaintiff would be mildly limited in lifting, handling, and carrying.[49] Based on these physical limitations, Dr. Prakash opined that Plaintiff was capable of performing light work.[50]

---

[46] See 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[47] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[48] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[49] AR 379.

[50] *Id.*

1

2

Dr. Prakash conducted another physical evaluation of Plaintiff on September 17, 2010.[51] Dr. Prakash diagnosed Plaintiff with carpal tunnel syndrome and opined that Plaintiff would be moderately limited in lifting, handling, and carrying.[52] Based on these physical limitations, Dr. Prakash opined that Plaintiff was capable of performing sedentary work.

Dr. Prakash conducted a third physical evaluation of Plaintiff on November 30, 2010.[53] Dr. Prakash diagnosed Plaintiff with mild to moderate cervical degenerative joint disease, which had no affect on work activities, and carpal tunnel syndrome in both hands and opined mild limitations in lifting, handling, and carrying. Based on these physical limitations, Dr. Prakash opined that Plaintiff was capable of light work.[54]

Plaintiff contends the ALJ erred by failing to address Dr. Prakash's September 2010 opinion. The ALJ's failure to explicitly assign weight to Dr. Prakash's September 2010 opinion is harmless. Plaintiff fails to adequately explain how, if assigned weight, this opinion would have changed the ALJ's ultimate determination. This Court declines to reverse an ALJ's decision on account of harmless error, which is defined as an error that is "inconsequential to the [ALJ's]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

[51] AR 383-86.

20

[52] AR 385.

21

[53] AR 389-92.

22

[54] AR 391.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

ultimate nondisability determination."[55] Although the ALJ did not explicitly state the weight given to Dr. Prakash's September 2010 assessment, the ALJ specifically referred to Dr. Prakash's September 2010 assessment, and summarized it, along with Dr. Prakash's November 2010 assessment in his analysis of Plaintiff's severe impairments. The ALJ reasonably recognized Dr. Prakash's November 2010 opinion was that Plaintiff's exertional capacity had improved to light work from Dr. Prakash's September 2010 opinioned limitation of sedentary work. Moreover, while the ALJ could have assigned a weight to each of Dr. Prakash's assessments, it is reasonable to infer that the ALJ considered all three of Dr. Prakash's assessments when he formulated Plaintiff's RFC because the RFC is consistent with Dr. Prakash's latest assessment.[56] Therefore, because Plaintiff failed to explain how Dr. Prakash's September 2010 opinion, if assigned any weight, would have changed the ALJ's ultimate findings, the Court declines to find error.

---

[55] *Molina*, 674 F.3d at 1111,1115.

[56] AR 21 (finding Plaintiff capable of performing light work with additional limitations); *see Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (holding that, where the ALJ discusses a piece of evidence in a manner which indicates that he is aware of the evidence, it is reasonable to infer that he considered that evidence in forming his conclusions regarding the plaintiff's ability to work).

1

2

3. <u>Ernest Segren, PAC and Aaron Thomason, ARNP.</u>

3

Mr. Segren performed a physical evaluation of Plaintiff on March 26, 2009,

4

and opined that Plaintiff was moderately limited in lifting, handling, and carrying,

5

and capable of sedentary work.[57] Mr. Thomason performed a physical evaluation of

6

Plaintiff on September 2, 2009, and also opined that Plaintiff was moderately

7

limited in lifting, handling, and carrying and capable of sedentary work.[58] The ALJ

8

gave reports and evaluations performed before the alleged onset date no weight.[59]

9

Medical opinions from before the alleged onset date are of limited relevance

10

to the ALJ's disability determination.[60] Plaintiff' alleged onset date in this claim is

11

January 6, 2012.[61] Mr. Segren's opinion was rendered on March 26, 2009 and Mr.

12

Thomason's opinion was rendered on September 2, 2009. Thus, both Mr. Segren's

13

and Mr. Thomason's opinions were rendered prior to the alleged onset date. The

14

timing of Mr. Segren's and Mr. Thomason's opinions was a germane reason for the

15

ALJ to discount Mr. Segren's and Mr. Thomason's opinions.[62]

16

———————————

17

[57] AR 421.

18

[58] AR 429.

19

[59] AR 24.

20

[60] *Carmickle*, 533 F.3d at 1165.

21

[61] AR 85.

22

[62] *See Ghanim*, 763 F.3d at 1161.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    4.    Dr. Stringer.

    On November 16, 2011, Dr. Stringer completed a functional assessment of
Plaintiff. Dr. Stringer opined that Plaintiff could sit for 6-8 hours and stand for half
an hour in an 8-hour workday, lift 20 pounds occasionally, and lift 5-10 pounds
frequently.[63]

    The ALJ discounted Dr. Stringer's opinion because it was rendered before
the alleged onset date.[64] As previously discussed, medical opinions from before the
alleged onset date are of limited relevance to the ALJ's disability determination.[65]
Plaintiff' alleged onset date in this claim is January 6, 2012.[66] Dr. Stringer's
opinion was rendered on November 16, 2011. The timing of Dr. Stringer's opinion
was a clear and convincing reason for the ALJ to discount Dr. Stinger's opinion.

    5.    Joseph Poston, ARNP.

    On May 28, 2015, Mr. Poston performed a physical functional evaluation of
Plaintiff. Mr. Poston diagnosed Plaintiff with cervical degenerative disc disease
and lumbar arthritis and opined that Plaintiff would be moderately and markedly
limited in lifting, carrying, handling, pushing, pulling, reaching, shopping, and

---

[63] AR 370-71. 462-63, & 472-73.

[64] AR 24.

[65] *Carmickle*, 533 F.3d at 1165.

[66] AR 85.

crouching.[67] Based on these physical limitations, Mr. Poston opined that Plaintiff was capable of performing sedentary work.[68] Mr. Poston opined similar findings in an October 2016 medical report.[69]

The ALJ discounted Mr. Poston's opinion because 1) it provided no explanation as to why Plaintiff would be unable to attend work on a consistent basis, 2) it was inconsistent with other opinions, and 3) it was inconsistent with Plaintiff's reported activities.

As to the ALJ's findings that Mr. Poston's check-box opinion was not explained, an ALJ may permissibly reject opinions that do not offer any explanation for their limitations.[70] Individual medical opinions are preferred over check-box reports.[71] An ALJ may permissibly reject opinions that do not offer any

---

[67] AR 465.

[68] AR 466.

[69] AR 501-03.

[70] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[71] *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996); *Bray*, 554 F.3d at 1228 (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

explanation for their limitations.[72] However, if treatment notes are consistent with the opinion, a check-box opinion may not automatically be rejected.[73] Here, the ALJ rationally found that Mr. Poston's limitations were not explained by Mr. Poston's comments contained in the accompanying medical report. The medical report mentioned neck and back pain, spine tenderness, decreased mobility, and difficulty with sleep. However, why these symptoms resulted in such moderate and marked limitations was not explained by the medical report. This was a specific and germane reason supported by substantial evidence to discount Mr. Poston's opinion.

Second, the ALJ's finding that Mr. Poston's more-limiting opinion was inconsistent with Dr. James Opara's opinion with no intervening examination findings is rational and supported by substantial evidence. Dr. Opara performed a physical examination of Plaintiff in April 2012 and opinioned that Plaintiff had no limitations in standing, walking, and sitting in an 8-hour workday with normal breaks; maximum lifting and carrying capacity; and manipulating activities.[74] In

---

[72] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[73] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[74] AR 400-03.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

forming his opinion, Dr. Opara noted Plaintiff's range of motion in spine, hip, knee, ankle, shoulder, wrist and finger/thumb joints were "[w]ithin normal limits."[75] Based on Dr. Opara's direct exam and medical expertise, the ALJ gave Dr. Opara's opinion great weight.[76] Plaintiff does not object to the ALJ giving great weight to Dr. Opara's opinion, but argues Mr. Poston's treatment notes were subsequent to Dr. Opara's findings. In light of Dr. Opara's opinion, that Mr. Poston's more-limiting opinion was inconsistent with the other medical opinions was a germane reason supported by substantial evidence to discount Mr. Poston's opinion.

Lastly, the ALJ discounted Mr. Poston's limitations because they were inconsistent with Plaintiff's own reported activities, specifically mowing his yard.[77] An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity, such as school.[78]  "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace."[79] However, here, any errors are harmless because the ALJ provided additional

---

[75] AR 402.

[76] AR 23.

[77] AR 24.

[78] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

[79] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

reasons for discounting Mr. Poston's opinion that were germane and supported by substantial evidence.[80]

Plaintiff fails to establish that the ALJ erred by discounting Mr. Poston's opinion.

6.    Debra Beriletti, ARNP

Ms. Beriletti completed a physical evaluation of Plaintiff on January 27, 2014. Ms. Beriletti diagnosed Plaintiff with neck and back pain and opined that Plaintiff would be mildly to moderately limited in standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stopping, and crouching due to back pain and moderately to markedly limited in lifting, carrying, handling, pushing, pulling, and reaching due to neck pain. Based on these physical limitations, Ms. Beriletti opined that Plaintiff was capable of performing sedentary work.[81]

The ALJ discounted Ms. Beriletti's opinion because 1) it was inconsistent with her treatment notes and 2) it was inconsistent with Plaintiff's reported activities.

First, the ALJ's finding that Ms. Beriletti's treatment notes did not support her opined restrictions is a rational finding supported by substantial evidence. Here, the ALJ identified a treatment note from January 2014 that the ALJ found

---

[80] *Tommasetti*, 533 F.3d at 1038.

[81] AR 442-43.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

was inconsistent with Ms. Beriletti's opinion.[82] On January 27, 2014, Ms. Beriletti observed a normal gain, a tender cervical and lumbar spine with mildly reduced range of motion, and no thoracic spine tenderness with normal mobility and curvature. Ms. Beriletti commented that Plaintiff had a slight decreased range of motion cervically with discomfort. Ms. Beriletti also noted a history of mild neck pain, which has worsened, and worsening backpain with a severity level of 5.[83] The ALJ concluded that this treatment note was inconsistent with Ms. Beriletti's opinion that Plaintiff was limited to sedentary work. That Ms. Beriletti's opined sedentary work restrictions were not supported by her treatment notes was a germane reason to discount Ms. Beriletti's opinion.[84]

Lastly, the ALJ discounted Ms. Beriletti's limitations because they were inconsistent with Plaintiff's own reported activities.[85] As previously discussed, an ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity, such as school.[86] "[M]any home activities are not easily transferable to

---

[82] AR 24 (citing AR 442-44.).

[83] AR 444 & 446.

[84] *See Bray*, 554 F.3d at 1228; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

[85] AR 24.

[86] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

what may be the more grueling environment of the workplace."[87] However, here, any errors are harmless because the ALJ provided an additional reason for discounting Ms. Beriletti's limitations that was germane and supported by substantial evidence.[88]

## C.    Step Three (Listings): Plaintiff fails to establish error.

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listings 1.02 and 1.04 in combination.

Listing 1.02 involves major dysfunction of a joint "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)."[89] Listing 1.02A requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."[90] "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit ambulation without the use of a hand-held assistive device(s) that limits the

---

[87] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[88] *Tommasetti*, 533 F.3d at 1038.

[89] 20 C.F.R. § Pt. 404, Subpt. P,App.1, 1.02.

[90] 20 C.F.R. § Pt. 404, Subpt. P,App.1, 1.02A.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

functioning of both upper extremities."[91] Listing 1.02B requires "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c."[92] "An ability to perform fine and gross movements effectively means ... an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" involving the upper extremities.[93]

Listing 1.04, "Disorders of the Spine," provides the Listing is met when the spinal condition results in compromise of a nerve root and there is:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by

---

[91] 20 C.F.R. Pt. 404, Subpt P, App. 1, 1.00B2b.

[92] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02B.

[93] 20 C.F.R. Pt. 404, Subpt P, App. 1, 1.00B2c.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Here, the ALJ determined that Plaintiff's degenerative disc disease of the cervical and lumbar spine, learning disorders, and pain disorder were severe impairments. However, the ALJ opined there were no findings of joint space narrowing, bony destruction, or ankylosis at either a major peripheral weight-bearing joint at the hip, knee, or ankle, or a major peripheral joint in each upper extremity at the shoulder, elbow, or wrist-hand. Further, the ALJ indicated that prior examinations found Plaintiff's wrist and wrist joints were within normal limits.[94] The ALJ also opined that the medical evidence did not support a compromised nerve root of the spinal cord or lumbar spinal stenosis. Plaintiff cites his own symptom reporting and diagnoses and observations from an examination with Mr. Poston, as evidence that the ALJ should have identified as support for meeting Listing 1.02B and 1.04 in combination. The evidence Plaintiff identifies does not undermine the ALJ's finding. As discussed above, the ALJ concluded that Mr. Poston's examination findings were inconsistent with other opinions and not fully explained.[95] The record fails to show that Plaintiff had such an extreme loss of function that he was unable to independently initiate, sustain, or complete activities involving the upper extremities or met the required elements of Listing

---

[94] AR 18 (citing AR 423.).

[95] AR 24.

1.04. Therefore, Plaintiff fails to show error in the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal Listings 1.02 or 1.04, singly or in combination.

**D.      Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[96] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[97] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the objective medical evidence, seeking treatment, and daily activities.[98]

---

[96] *Molina*, 674 F.3d at 1112.

[97] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[98] AR 22-24.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[99] However, objective medical evidence[100] is a relevant factor in considering the severity of the reported symptoms. [101] In contrast to Plaintiff's reported disabling physical symptoms, the ALJ rationally found that the medical record reflected that Plaintiff was not as physically limited as he claimed but instead could perform light work with the identified postural restrictions. As the ALJ highlighted, Dr. Opara, after performing a physical examination, noted Plaintiff's range of motion in his joints and spine were within normal limits, straight leg raising was negative bilaterally, motor strength/muscle bulk and tone is 5/5, and sensory exam showed light touch and pinpricks are intact throughout Plaintiff's upper and lower extremities.[102] That the objective medical evidence

---

[99] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[100] "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. § 416.902(k). In turn, "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id*. § 416.902(l); *see also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[101] *Rollins*, 261 F.3d at 857.

[102] AR 402.

1

2

revealed that Plaintiff's physical limitations were not as limiting as Plaintiff

claimed was a relevant factor for the ALJ to consider.

3

4

Second, an unexplained, or inadequately explained, failure to seek treatment

5

or follow a prescribed course of treatment may be considered when evaluating the

6

claimant's subjective symptoms.[103] And evidence of a claimant's self-limitation and

lack of motivation to seek treatment are appropriate considerations in determining

7

8

the credibility of a claimant's subjective symptom reports.[104] When there is no

9

evidence suggesting that the failure to seek or participate in treatment is

10

attributable to a mental impairment rather than a personal preference, it is

11

reasonable for the ALJ to conclude that the level or frequency of treatment is

12

inconsistent with the alleged severity of complaints.[105] Here, the ALJ highlighted

13

that Plaintiff waited eight years before seeking treatment for degenerative disc

disease.[106] Furthermore, the record shows multiple referrals to follow up with an

14

15

orthopedic or get an MRI, but there are no medical records related to these

16

referrals in the record or evidence as to why Plaintiff was unable to see an

17

[103] *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

18

19

[104] *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*,

312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff

20

was not seeking treatment).

21

[105] *Molina*, 674 F.3d at 1113-14.

22

[106] AR 22.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

orthopedic.[107] The only supporting evidence in the record is Plaintiff's own testimony that when he goes to the doctor "they always tell [him] the same thing; there's nothing they can really do for [him]" and that it took so long to get an MRI because "they kept on postponing it."[108] However, this does not adequately explain Plaintiff's consistent history of not seeking medical treatment. The ALJ reasonably concluded that Plaintiff's delay in seeking treatment undermined the severity of his subjective symptom testimony. This was a clear and convincing reason to discredit the severity of Plaintiff's symptom testimony.

Lastly, the ALJ also discounted Plaintiff's symptom reports because they were inconsistent with his activities of daily living.[109] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities

---

[107] The record was held open for three weeks to allow time for Plaintiff's attorney to submit a report of an MRI scheduled for October 20, 2016, but no records were ever submitted. AR 15. *See* AR 374 & 436 (referred to ortho for further evaluation); AR 378, 380, & 392 ("Needs orthopedic consultation for Carpal Tunnel Syndrome"); AR 422 (recommend ortho surgery for CTS, surgical treatment of this condition should result in return to full employment capacity with little or no restrictions); AR 428 & 430 (recommend surgical consult); & AR 443 (referral made for MRI).

[108] AR 67.

[109] AR 22.

inconsistent with the reported disabling symptoms.[110] The ALJ highlighted that Plaintiff was able mow the yard and complete household chores, including sweeping, laundry, washing dishes, and cooking.[111] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which can be achieved in relatively short periods of time and with multiple breaks, as Plaintiff testified that he needed to take a break every ten to fifteen minutes when mowing the yard, and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[112]

Because the ALJ articulated two other supported grounds for discounting Plaintiff's reported symptoms—inconsistent with the objective medical evidence and seeking treatment—the ALJ's decision to discount Plaintiff's reported symptoms is upheld on this record

**E.    Steps Five: Plaintiff fails to establish consequential error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by his providers. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the

---

[110] *Molina*, 674 F.3d at 1113.

[111] AR 23, 44-57, & 274-81.

[112] *Molina*, 674 F.3d at 1112-13.

ALJ's hypothetical properly accounted for the limitations supported by the record.[113]

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.


**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 10th day of November 2020.


                    s/Edward F. Shea
                    EDWARD F. SHEA
             Senior United States District Judge


---

[113] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).